UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN ADMIRALTY

PROMETHEUS MARITIME
INVESTMENTS, LLC,

     Plaintiff,

v.                                  Case No. 8:25-cv-941-MSS-CPT

S/Y DREAMER, a 1995 55' BRUCE
ROBERTS SAILBOAT, former Official
No. 1030661, in rem, and her owners,
FERNANDO VILLA and ZAPALLAL
REFORESTATION, INC., in personam,

     Defendants.
_____/

**REPORT AND RECOMMENDATION**

Before me on referral is Plaintiff Prometheus Maritime Investments, LLC's

(Prometheus) renewed motion for the interlocutory sale of a 1995 55' Bruce Roberts

sailboat named "Dreamer" (the Vessel), which is owned by Defendants Zapallal

Reforestation, Inc. (Zapallal) and its principal, Fernando Villa (Villa).[1] (Doc. 33). For

---

[1] Zapallal has never formally appeared in this action, and it is unclear whether it has even been served. If Zapallal has been served, it unclear why Prometheus has not moved for a clerk's default against it. Prometheus should promptly address these issues. If and when Zapallal does appear in this action, as a corporation, it must be represented by counsel. *See* M.D. Fla. R. 2.02(b)(2) ("A party, other than a

the reasons set forth below, I respectfully recommend that Prometheus's motion be granted.[2]

I.

The following factual background is largely derived from the materials tendered by Prometheus in connection with its renewed motion, including a declaration executed by its in-house counsel, Robert George, who oversees the company's maritime investments. (Doc. 53-1). In April 2024, Prometheus purchased a marina known as "Sailor's Wharf" situated in St. Petersburg, Florida from the marina's owners, Sailor's Wharf, Inc., and its principal, Jopie Helsen. *Id.* At the time of Prometheus's purchase, there were several boats left at the marina, one of which was the Vessel. *Id.* Villa had been storing the Vessel in a slip at Sailor's Wharf at a cost of approximately $680.50 per month. *Id.*

After Prometheus acquired the marina, Helsen remained onsite to wind down the operations of Sailor's Wharf and to coordinate the disposition of the remaining boats on the property. *Id.* At the conclusion of this wind-down period in November 2024, the Vessel was the only boat still housed at the marina. *Id.*

---

natural person, can appear through [a] lawyer only."). As for Villa, he has represented himself throughout this proceeding.

[2] In light of the nature of Prometheus's motion, I proceed by way of a report and recommendation rather than by way of an order. *See IncredibleBank v. Provocative*, 722 F. Supp. 3d 56, 59 (D.R.I. 2024) (noting that magistrate judges generally treat motions for interlocutory sale as dispositive motions) (citation omitted); *Schoninger v. M/V Three Olives*, 2010 WL 1935855, at *1 n.1 (D. Me. May 10, 2010) (same) (collecting cases).

2

Helsen requested that Villa relocate the Vessel to another marina or furnish him with a clean title so that the Vessel could be either removed or sold. *Id.* Prometheus's yard manager engaged in similar discussions with Villa in December 2024 and warned him that the charge for storing the Vessel at the property would be increasing to $2,500 per month. *Id.* In February 2025, Villa acknowledged in writing that he agreed to the monthly wharfage rate of $2,500. *Id.* Villa, however, neither remitted this sum to Prometheus, nor transported the Vessel to a different location. *Id.*

Notwithstanding Villa's lack of payment, Prometheus continued to provide maritime necessaries to the Vessel in the form of slip storage and related services.[3] *Id.* As a result of doing so, Prometheus acquired a maritime lien on the Vessel. *See* (Doc. 33); *see also* 46 U.S.C. § 31341, et seq.

In April 2025, Prometheus commenced this action by filing a complaint against the Vessel in rem and against Villa and Zapallal in personam. (Doc. 1). In its complaint, Prometheus pleaded a breach of contract and an enforcement of its maritime lien based on the Defendants' failure to compensate Prometheus for its storage costs. *Id.*

Close in time to the filing of its complaint, Prometheus sought and obtained both an arrest warrant and a substitute custodian—Dalton Peters from Prometheus—

---

[3] The term "maritime necessaries" includes all goods or services that are "reasonably needed" to maintain the operability of a vessel. *Moore v. M/V Sunny USA*, 847 F. App'x 603, 607 (11th Cir. 2021) (internal quotation marks and citation omitted).

for the Vessel.  (Docs. 2, 6, 9, 10).  Later in April 2025, the United States Marshals arrested the Vessel and turned it over to Peters.  (Doc. 15).

In July 2025, Prometheus filed a motion seeking the interlocutory sale of the Vessel pursuant to Rule E(9) of the Supplemental Rules for Admiralty and Asset Forfeiture Actions (Supplemental Rules).  (Doc. 19).  Prometheus also requested in its motion that it be permitted to "credit bid"[4] for the Vessel at the time of the sale based on the maritime necessaries (namely, wharfage) it had supplied the Vessel.  *Id*. at 2. The Court denied Prometheus's motion in August 2025 as inadequately supported after hearing argument on the matter from Prometheus and Villa.  (Doc. 27).

The instant motion followed.  (Doc. 33).  By way of that submission, Prometheus renews its request for an interlocutory sale of the Vessel pursuant to Supplemental Rule E(9) and for authorization to "credit bid" on the boat as well.  *Id*. In an effort to cure the infirmities with its previous motion, Prometheus includes declarations and exhibits with its filing that it maintains establish: (1) the Vessel is deteriorating and will continue to do so; (2) the expense of keeping the Vessel at

---

[4] The phrase "credit bid" is a "colloquial term used to express a secured creditor's right to bid at the sale of its collateral and then, at closing, [to] offset the purchase price by the value of its outstanding claim secured by the collateral being purchased." *In re RML Dev., Inc.*, 528 B.R. 150, 153–54 (Bankr. W.D. Tenn. 2014) ); *see also SHM Loch Lomond, LLC v. That Certain 1947 Chris Craft Motor Yacht of Approximately 46-Feet in Length*, 2024 WL 4627046, at *2 (N.D. Cal. Sept. 11, 2024) (stating that a credit bid allows a plaintiff foreclosing on a valid security interest in a vessel to bid "without payment of cash, certified check[,] or cashier's check[ ] up to the total amount of the secured indebtedness"), *report and recommendation adopted*, 2024 WL 5391323 (N.D. Cal. Oct. 21, 2024); *Gambol Indus., Inc. v. M/Y Heart's Desire*, 2023 WL 12166452, *1 n.3 (C.D. Cal. Aug. 4, 2023) (defining a credit bid as a "bid[ ] made by [a] creditor-beneficiary at a foreclosure sale for up to the total amount of the security indebtedness") (internal quotation marks and citation omitted).

4

Prometheus's marina is disproportionate to the Vessel's value; and (3) Villa has unreasonably delayed the removal of the Vessel from Prometheus's property. *Id*. Villa filed a belated response to Prometheus's renewed motion in September 2025, in which he disputed Prometheus's assertions. (Doc. 39).

At a subsequent oral argument on Prometheus's renewed motion in October 2025 (Doc. 45), it was clear that Prometheus and Villa's quarrel over the relevant facts could not be resolved without an evidentiary hearing. I therefore scheduled such a hearing in November 2025 and provided Prometheus and Villa with notice of same well in advance. (Doc. 48).

At the November 2025 evidentiary hearing, Prometheus appeared but Villa did not. (Doc. 51). In response to Villa's non-appearance, I entered an Order instructing Villa to show cause in writing within twenty-one days why he failed to attend the hearing and why he should not be sanctioned for that failure. (Doc. 52). Villa did not comply with this Order.

In the meantime, I directed Prometheus to submit within a certain time frame additional sworn declarations and documentary exhibits in support of its motion. (Doc. 51). Prometheus has since filed those materials (Doc. 53), and its renewed motion is thus ripe for the Court's review.

## II.

As pertinent here, Supplemental Rule E(9) empowers a court to approve an interlocutory sale of a vessel if (a) the vessel is "liable to deterioration, decay, or injury by being detained in custody pending the action;" (b) the expense of keeping the vessel

is "excessive or disproportionate;" or (c) there was an "unreasonable delay in securing release" of the vessel. Fed. R. Civ. P. Supp. Admiralty Rule E(9)(a)(i))(A)–(C). The focus of Supplemental Rule E(9) is to "avoid[ ] the recognized complications associated with maintaining a vessel under arrest" without requiring a court to resolve "the merits of any particular claim." *KFW v. M/V Yorktown*, 2014 WL 3339614, at *3 (M.D. Fla. July 7, 2014) (quoting *Regions Bank v. Motor Yacht Royal Indulgence*, 2010 WL 4595792, at *3 (N.D. Fla. Oct. 3, 2010) (internal quotation marks omitted)). The party moving under Supplemental Rule E(9) "need only demonstrate that one of the[ three listed] conditions is present to justify an interlocutory sale of the vessel." *20th Century Fox Film Corp. v. M.V. Ship Agencies*, 992 F. Supp. 1434, 1437 (M.D. Fla. 1997) (citing *Silver Star Enters., Inc. v. M/V Saramacca*, 19 F.3d 1008, 1014 (5th Cir. 1994)).

In its renewed motion, Prometheus maintains that it satisfies all three of Supplemental Rule E(9)'s prongs. (Doc. 33). Each of these contentions will be addressed in turn.

### A.

With respect to the first prong, courts in the Eleventh Circuit generally require the moving party to provide sufficient evidence "demonstrating that the subject vessel is liable to deterioration, decay, or injury." *Regions Bank v. M/V Maxx B*, 2023 WL 205249, at *5 (S.D. Ala. Jan. 17, 2023) (collecting cases). To meet this standard, the movant must offer more than generalized statements regarding the condition of the boat. *Id.*

In this case, Prometheus retained an expert marine surveyor, Roger Shore, to inspect the Vessel.   (Doc. 33-2).  In a sworn declaration executed in August 2025, Shore opined that the physical state of the Vessel had materially worsened, at least in part, because the boat sat unoccupied and neglected for at least a year and a half.  (Doc. 33-2 at 3); *see also* (Doc. 53-1 at 4–5).  As Shore explained:

> The Vessel . . . appeared to be unattended to for a significant period of time.  It is a steel hull [boat,] and there were several areas where a doubler or steel plate had been welded over the hull of the [V]essel.  This is an indication that there was significant corrosion to the steel hull where the doublers were placed to cover or as a temporary repair to the hull.  The steel hull exhibited pitting in some areas.  [In addition, t]he topside was fiberglass and due to lack of care th[at] fiberglass was chalky and degraded usually caused by UV exposure and lack of care.  The interior of the [V]essel was not cared for and looked to be in bad shape.  The [V]essel was not hooked up to shore power[,] so the lack of air conditioning for the [V]essel's cabin and the exposure to moist and hot air mildew [sic] and an unclean environment.[5]  The sails were stored in the forward compartment, were rolled and secured[,] and clearly had not received any care and attention for a significant period of time. . . .  [Given] the condition of the [V]essel, I suspect that [the ship's engine and generator] have not been run for a considerable amount of time.  It is imperative to operate a vessel's machinery on a regular basis.  The failure to maintain the machinery will result in corrosion and rust throughout the engine, including in the cylinder chambers, which will ultimately result in a catastrophic failure of the engine or generator.

(Doc. 33-2 at 3).

---

[5] I assume for purposes of my analysis that Shore meant to say in this sentence that "the lack of air conditioning for the Vessel's cabin and the exposure to moist and hot air" either caused or may have caused "mildew and an unclean environment."

Shore's attestations adequately establish the first prong of Supplemental Rule E(9).  A review of the case law buttresses this conclusion.  *See Regions Bank*, 2023 WL 205249, at *4, *5 (finding Supplemental Rule E(9)'s deterioration prong satisfied where the plaintiff presented an affidavit describing the subject vessel as experiencing deterioration and decay, and as being susceptible to "accelerated corrosion" given the "brackish water" in which it had sat idle); *KFW*, 2014 WL 3339614, at *2–3 (ruling that Supplemental Rule E(9)'s deterioration prong was met where a consultant's report stated that the boat at issue was deteriorating and that its "bilge, air conditioning, and other systems" were "potentially compromis[ed]" due to its sustained lack of access to shore power).

While Villa originally disputed Prometheus's claim that the Vessel was deteriorating, he has waived his right to raise that challenge as a result of his contumacious behavior, including his failure to appear at the November 2025 evidentiary hearing.  *See Young v. Furniture Discounters Inc.*, 2020 WL 70846, at *2–3 (S.D. Ind. Jan. 7, 2020) (deeming a party to have waived his right to contest the merits of his opponent's arguments based, at least in part, on his failure to respond or appear at a hearing on the matter); *Walker v. RDR Real Estate, LCC*, 2012 WL 4328348, at *6 (E.D. Mich. Sept. 20, 2012) (finding that a litigant waived his right to challenge certain proceedings "by ignoring legal documents and failing to appear at the . . . [relevant] hearings"); *Allied Int'l Union v. Tristar Patrol Servs., Inc.*, 2007 WL 2845227, at *4 (S.D.N.Y. Sept. 26, 2007) ("[A]ssuming arguendo that [r]espondent's substantive challenges to the [a]ward have some merit, they were waived by its failure to appear

8

at the hearing.") (collecting cases); *U.S. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 745 F. Supp. 189, 193 (S.D.N.Y. 1990) (ruling that the failure to appear at a hearing before an adjudicator constituted a waiver of the right to dispute the evidence presented at said hearing).

Even if Villa is deemed not to have waived his right to contest the evidence furnished by Prometheus, his defense on the deterioration prong fails in any event. In his response to Prometheus's first motion for an interlocutory sale, Villa relied on a marine surveyor inspection report from 2013 to show that the Vessel was not in as poor a condition as Prometheus asserted. (Doc. 39-1 at 5, 8). This report, however, is hopelessly outdated and does not account for the recent deterioration suffered by the Vessel as detailed by Shore in his declaration.

B.

The second prong of Supplemental Rule E(9)—as noted above—permits the interlocutory sale of boat where "the expense of keeping the property is excessive or disproportionate." Fed. R. Civ. P. Supp. Admiralty Rule E(9)(a)(i)(B). In addressing this element, "[c]ourts often weigh the costs [of maintaining a vessel] against the value of the vessel or the amount of the claims against the vessel." *Naval Logistic, Inc. v. M/V Family Time*, 2024 WL 828124, at *3 (S.D. Fla. Feb. 27, 2024) (internal quotation marks and citation omitted), *aff'd sub nom. Naval Logistics, Inc. v. M/V Family Time*, 2025 WL 1733999 (11th Cir. June 23, 2025).

Here, as discussed earlier, the monthly outlays for housing the Vessel alone amount to $2,500. (Doc. 53-1 at 3). Moreover, this cost has been accumulating since

9

at least February 2025 and—according to Prometheus's in-house counsel—stands at $25,000 as of November 2025.  *See id.* at 3, 24.  As for the Vessel's worth, Shore values it at approximately $40,000.  (Doc. 33-2 at 4). In light of substantial expenditures required merely to store the Vessel and the diminished of value of the boat itself, Prometheus also fulfills the second prong.  *See Naval Logistic, Inc.*, 2024 WL 828124, at *3 (concluding that a $4,000 monthly cost to maintain a boat worth $99,000 was "disproportionate"); *Turner v. Neptune Towing & Recovery, Inc.*, 2010 WL 11651427, at *3 n. 4 (M.D. Fla. Dec. 30, 2010) (ruling that a monthly maintenance cost of roughly $2,300 was "excessive and/or disproportionate" for a vessel worth approximately $85,000); *see also Caterpillar Fin. Services Corp. v. Coleman*, 1999 WL 33218595, at *2, *3 (C.D. Cal. Aug. 19, 1999) (finding that a $1,400 monthly charge for keeping a $325,000 vessel in custody "appear[ed] to be excessive").

For the reasons stated previously, Villa has waived his right to challenge the valuation evidence offered by Prometheus.  Irrespective of that waiver, Villa's evidence on this issue is limited to the marine surveyor report from 2013.  (Doc. 39-1 at 4, 5).  I again do not find that assessment to be persuasive given Shore's recent evaluation of the Vessel's worth, which again is predicated on the difficult conditions the Vessel has been subjected to over at least the last year and a half.

C.

The third prong of Supplemental Rule E(9)—as noted above—authorizes the interlocutory sale of a boat where "there is an unreasonable delay [by the vessel owner] in securing release of the property."  Fed. R. Civ. P. Supp. Admiralty Rule

10

E(9)(a)(i)(C).   Courts have deemed this threshold to be met where "[a]t least four months" have transpired since the arrest of the vessel. *Regions Bank*, 2023 WL 205249, at *5 (collecting cases); *see also Turner*, 2010 WL 11651429, at *2 ("A motion for an interlocutory sale is not typically granted until enough time has passed to allow defendants to provide a bond to secure release of the vessel.   As a general rule, defendants are given at least four months to bond a vessel absent some other considerations.") (internal quotation marks and citations omitted).

Here, it has been roughly eight months since the Vessel was arrested, and Villa has not made any meaningful effort to secure its release, let alone post a bond. *See* (Doc. 53-1 at 4–5); (Doc. 53-2 at 1–2).   Accordingly, Prometheus prevails on the third prong as well. *See Regions Bank*, 2023 WL 205249, at *5 (deeming a seven-month delay to be adequate under the third prong of Supplemental Rule E(9)) (citing *M.D. Moody & Sons, Inc. v. McLaren*, 2012 WL 13136843, at *2 (M.D. Fla. July 30, 2012)); *20th Century Fox Film Corp.*, 992 F. Supp. at 1438 (finding an eight-month delay to be unreasonable).

As with the other prongs of Supplemental Rule E(9), Villa has waived his right to contest the "unreasonable delay" prong.   Even were that not the case, Villa's response to Prometheus's unreasonable delay claim is that he could not move the Vessel to another location because the hurricanes in 2024 rendered the channel too shallow for him to do so and because Prometheus sold the crane at the marina which

would have otherwise permitted him to extract the boat. (Doc. 39 at 2).[6] This argument is unavailing because it is undisputed that Villa has never attempted in good faith to relocate the Vessel in the roughly eight months since it was arrested. *See id.*; *see also* (Doc. 53-2 at 1–2); (Doc. 53-1 at 4).

## III.

Prometheus's request for a credit bid based on the maritime necessaries it has supplied the Vessel is likewise well-founded. While the Local Rules do not directly address such relief, numerous courts in the Eleventh Circuit have approved credit bids in interlocutory sales and admiralty actions involving unpaid debts. *See, e.g.*, *Harbortown Marina-Canaveral, Ltd. v. S/V "Odyssey,"* 2019 WL 6716138, at *2 (M.D. Fla. Dec. 10, 2019) ("[The p]laintiff may make a credit bid at the auction of the [v]essel, which shall be an amount equal to the outstanding principle balance alleged in the [c]omplaint."), *order clarified sub nom. Harbortown Marina-Canaveral, Ltd. v. Odyssey*, 2020 WL 7386344 (M.D. Fla. Oct. 22, 2020); *Nelson Boatyard, Inc. v. Vessel Salamati*, 2025 WL 3154273, at *3 (S.D. Ala. Feb. 28, 2025) (ruling that the plaintiff "may credit bid up to the amount of the debt due as of the date of the sale"); *see also Morningstar Marinas/Golden Isles, LLC v. M/Y Kander*, 764 F. Supp. 3d 1352, 1361–62 (S.D. Ga. 2025) ("[S]everal decisions from district courts within the Eleventh Circuit allow plaintiffs to credit bid.") (collecting cases); *Naval Logistic, Inc. v. A 58' Montery Motor*

---

[6] Prometheus contested this assertion in its original motion, stating that its counsel advised Villa in April 2025 that "a suitable travel lift was at the marina." (Doc. 19 at 3). This is another issue that could have been readily disposed of at the November 2025 evidentiary hearing had Villa appeared at that proceeding.

*Vessel*, 2024 WL 1286259, at *2, *6 (S.D. Fla. Jan. 16, 2024) ("Courts in this Circuit routinely . . . permit the party enforcing a maritime [necessaries] lien to credit bid its judgment at the sale.") (collecting cases), *report and recommendation adopted sub nom.*, *Naval Logistic, Inc. v. 58' Montery Motor Vessel*, 2024 WL 1285526 (S.D. Fla. Mar. 26, 2024); *Southport Marina Dev. Co. LLC v. N'Zaza*, 2025 WL 3485592, at *3 (E.D. Wis. Dec. 4, 2025) ("Some districts have adopted [l]ocal [a]dmiralty [r]ules expressly authorizing a plaintiff with an admiralty claim senior in priority to credit bid at auction. . . . Even without such provisions, courts across the country have allowed senior lienholders in admiralty actions to credit bid at auction.") (collecting cases).

In light of this case authority, Prometheus should be authorized to make a credit bid of up to $25,000, which is the most recent figure for maritime necessaries that Prometheus has tendered to the Court. (Doc. 53-1 at 3).[7]  This is especially true since Villa did not object to such relief in his response to Prometheus's renewed motion (Doc. 39), and since Prometheus has "agree[d] to pay or make provision for all claims adjudged to be senior in priority," *IncredibleBank*, 722 F. Supp. 3d at 61 (collecting

---

[7] I note that while there are courts which have denied credit bids for lien holders for maritime necessaries, this has seemingly happened only where there were multiple claimants against the subject vessel.  *See, e.g., Coastal Marine Mgmt. v. M/V Sea Hunter (O.N. 598425),* 274 F. Supp. 3d 6, 8–9 (D. Mass. 2017) (denying a credit bid for a maritime necessaries lien holder when there were "several" others who also filed claims against the vessel).  This is not the situation here.  *See* (Doc. 33 at 8) (attesting that "no other claimants" besides Prometheus have come forward); *see also City of Newport Beach v. M/Y Pescaholic*, 2025 WL 3255004, at *4 (C.D. Cal. Mar. 6, 2025) (approving a credit bid for a plaintiff with a maritime necessaries lien since the plaintiff was the "only maritime lien claimant appearing in this action"); *Driscoll Mission Bay, LLC v. M/Y New Horizon*, 2025 WL 43731, at *4 (S.D. Cal. Jan. 7, 2025) (granting the plaintiff, who held a maritime necessaries lien, a credit bid after finding that "[t]here is nothing in the record to indicate that a party aside from [the] [p]laintiff has asserted any maritime lien claim against the [d]efendant [v]essel").

cases); *see also* (Doc. 33 at 8) ("Prometheus respectfully requests a credit bid . . . conditioned upon satisfying any superior liens").

IV.

Based upon the foregoing, I respectfully recommend the Court enter an Order stating the following:

1.      The United States Marshal for the Middle District of Florida shall sell the Vessel, which is more particularly described as the S/Y Dreamer, a 1995 55' Bruce Roberts Sailboat, former Official No. 1030661, her engines, tackle, apparel, appurtenances, etc., at a public auction for the highest price that can be obtained.

2.      The public auction shall take place within thirty (30) days of the issuance of the Court's Order at a date and time acceptable to the United States Marshal or at the Marshal's office located on the Fourth Floor of the Samuel M. Gibbons Courthouse, 801 North Florida Avenue, Tampa, Florida 33601.

3.      Prometheus shall give notice of the date, time, and place of the sale to (i) the Vessel's owners and all known lien holders via mail or Federal Express at the owners' address(es) listed on the return of service and via the electronic court filing system; and (ii) the public-at-large by advertising same at least once per week for two successive weeks in the Tampa Bay Times, a newspaper of general circulation within this District, the first advertisement in the publication to be at least seven (7) days before the date of the Court-ordered sale; and the second publication to be at least three (3) days before the date of the sale per Section 5(q) of the Middle District of Florida's Admiralty and Maritime Practice Manual (Practice Manual).

4. Prometheus shall be allowed to credit bid in the amount of $25,000 and to deposit said sum with the United States Marshal in lieu of cash or other funds should it be the highest bidder.

5. The Unites States Marshal shall require at the Court-ordered sale that the highest bidder, except for Prometheus (which—as noted above—is entitled to a credit bid of $25,000), deposit with the United States Marshals for the Middle District of Florida ten percent of the bid price and the remaining purchase price within three (3) days or, if an objection to the sale is received, three (3) days after the confirmation of the sale of the Vessel pursuant to Section 5(r) of the Practice Manual.

6. The United States Marshal shall pay into the registry of the United States District Court for the Middle District of Florida any and all monies received as a result of the sale, and the parties who have asserted claims or liens to such proceeds, including the Defendants here, shall be provided an opportunity to present and argue their case regarding priority and entitlement to such proceeds.

7. The United States Marshal shall prepare such documents and reports that may be necessary for the confirmation of the sale by the United States District Court.

8. The confirmation hearing shall be held at the United States District Court for the Middle District of Florida or remotely, on a date and time to be established by the Court, which shall be after the objection period provided for in Section 5(r)(7) of the Practice Manual.

9. Prometheus shall inform any successful bidder which is not a party to this case of the date and time of the confirmation hearing.

Respectfully submitted this 31st day of December 2025.

_Christopher P. Tuite_
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable Mary S. Scriven, United States District Court
Counsel of record
Any unrepresented party

16